UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBYN LEWIS and LEAH CONE, | ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 18-cv-3173-JES-JES |
| COUNTY OF MACON, a unit of local Government, and ALBERT JAY SCOTT, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER AND OPINION

This matter is now before the Court on the Motion for Summary Judgment (Doc. 39) of Defendants Macon County and former Macon County State's Attorney, Albert Scott. Plaintiffs Robyn Lewis and Leah Cone have filed a Response (Doc. 46), and Defendants have filed a Reply (Doc. 48). For the reasons set forth below, Defendants' Motion (Doc. 39) is GRANTED.

**I.     BACKGROUND**

Plaintiffs are proceeding on a combined 10 count complaint, with Counts I-VI and IX-X directed against Macon County ("County"). Plaintiff Lewis alleges in Count I, and Plaintiff Cone in Count II, that the Defendant County retaliatorily discharged them in violation of state law. In Counts III and IV, Lewis and Cone respectively plead that the County violated the Illinois Whistleblower Protection Act by firing them in retaliation for their reporting prohibited electioneering and other illicit activity. In Counts V and VI, Plaintiffs plead under 42 U.S.C. § 1983, alleging that the County retaliated against them in response to the exercise of their First Amendment rights to freedom of association. Plaintiffs also make general allegations that their termination violated substantive due process, effectively raising a Fourteenth Amendment claim.

In Counts IX and X Plaintiffs plead a claim under 745 ILCS 10/9-102, asserting that the County is statutorily obligated to indemnify County personnel Kim Tarvin and Nicole Kronke for

1

any alleged wrongdoing even though they are not named parties. *See* Amended Complaint (Doc. 15 at 30). Plaintiffs also assert that the County must indemnify Defendant Scott, even though Scott is a State, not a County, official.

Counts VII and VIII are the only ones pled against Scott. Plaintiffs did not initially identify whether Scott is named in his official or personal capacity and now assert in their response to summary judgment that they proceed against Scott in his individual capacity. Plaintiffs allege Scott tortiously interfered with their business and employment relationship with the County. Plaintiffs request reinstatement, back pay, and benefits; and if there are no comparable positions to which they might be reinstated, front pay.

To survive summary judgment on the Counts I-VI claims against the County, Plaintiffs must sufficiently establish that if they were not solely employed by the County, they were at least jointly employed by it. The County denies that it employed Plaintiffs or had sufficient control to have been a joint employer is liable for the alleged firing, retaliatory firing, and violation of Plaintiffs' First and Fourteenth Amendment rights. Defendant Scott, while admittedly employing Plaintiffs, denies any wrongdoing in their termination. Scott asserts that Plaintiffs were terminated only after he learned that the Macon County Board would impose significant budget cuts on his office in the coming fiscal year.

## II. MATERIAL FACTS

On October 6, 1994, Plaintiff Robyn Lewis was hired by the County to work in the Circuit Clerk's Office. In January 1996, she joined the staff of the Macon County State's Attorney's Office (MCSAO), where she remained until her employment was terminated on July 7, 2016. During her time in the MCSAO, Lewis received various promotions including a promotion to Domestic Violence Coordinator and Victim Advocate, the position she held at the

time she was terminated. On July 28, 1997, Plaintiff Cone was hired to the MCSAO and worked there until she, too, was terminated on July 7, 2016. While at the MCSAO, Ms. Cone received various promotions and was working as a Deferred Prosecution Coordinator AO at the time of her termination.

Defendant Scott served as the Macon County State's Attorney from December 1, 2012, through November 30, 2020, and ran for re-election in 2016. In November 2015, Kim Tarvin, an MCSAO general administrative assistant, circulated Scott's re-election petition in the workplace. At all relevant times, the Macon County Handbook was in effect which stated in relevant part:

> A-11-3 Political Activity: No employee of Macon County shall be subject to direct or indirect political influence or coercion; employees are not required to participate in or contribute financially to political campaigns; political affiliation or support is not consideration for employment with the County. County employees shall not circulate petitions or campaign literature in any County office building nor shall they solicit or receive any contribution or political service from any person for any political purpose during regular office hours or in any County office building.

(Doc. 39-8 at 18).

On July 6, 2016, Plaintiff Lewis informed Gregory Mattingly, a member of the Macon County Board who served on the Justice Committee, of Tarvin's violations of the Macon County Handbook. Plaintiff testified that, prior to this, she had contacted the Office of Illinois Attorney General in Springfield and the Inspector General's Office in Chicago about her concerns.

Plaintiff Lewis

Ms. Lewis testified that in November 2015, she met Tarvin in the hallway and was told that Scott's re-election petition was in Tarvin's office, and that Lewis could come by if she wanted to sign it. Ms. Lewis did not sign the petition and reported the incident to Amanda Burger, then the MCSAO Personnel Director. Lewis testified that in mid-May 2016, she had a meeting with Scott and Assistant State's Attorney Nicole Kroncke. At that time, Scott told Lewis

3

that she "needed to maybe watch who [she] was being seen with and where [she's] going." (Doc. 39-1 at 63-64, 77-81).

As noted, on July 20, 2016, Plaintiff Lewis met with Mattingly to report the electioneering and other issues in the MCSAO. Lewis told Mattingly that when she refused to sign Scott's re-election petition, Tarvin ridiculed her and reported it to other staff members, including Kroncke, and Scott, himself. Lewis also told Mattingly that she had seen Scott using investigators to pick up his children from school. Plaintiff Lewis believes she was terminated because of her reports to Mattingly. (Doc. 39-1 at 57, 98-99). Defendants deny that Scott was aware of her complaints, citing Mattingly's testimony that he did not tell Scott, MCSAO staff, or county board members about his conversation with Lewis. (Doc. 39-7 at 27). In addition, Tarvin testified that she never had a conversation with Scott as to who had or had not signed the petition and Scott testified that he did not review the signatures on the petition Tarvin had circulated.

Plaintiff Cone

Plaintiff Cone testified that Scott and Kroncke were "pretty much untouchable" and made those who talked to them feel stupid. (Doc. 39-2 at 33). She testified that there was "hostility" and when she met Scott in the hallway, he would drop his head, keep walking, and never speak. She testified that Kroncke would not answer her questions. *Id*. at 33-34. Cone indicated that when she refused to sign the re-election petition, Tarvin looked at her "with daggers" and became very angry. *Id*. at 35. Ms. Cone reported the electioneering to Ms. Burger, additionally informing Burger that she had seen employees and correctional officers going to Tarvin's office to sign the petition. (Doc. 39-2 at 37).

Amanda Burger has also submitted an affidavit in which she attests that in November 2015, Tarvin approached her and Victim Coordinator, Melanie Long, at work, asking them to

4

sign the re-election petition. They refused, as this was during work hours and on County property. Ms. Burger reported the incident to Defendant Scott. Burger attests that Plaintiff Lewis, along with staff members, Dawn Pyles, Kim Sloan, Brandy Chisenall, and Jason Van Alstine, complained to her that Tarvin continued soliciting signatures. Burger reported this to Scott; and as previously noted, Robyn Lewis reported it to Mattingly.

Burger attested that on January 4, 2016, Kroncke returned from medical leave and accused Burger of trying to get her fired. Ms. Burger explained that, during Kroncke's absence, she went to Scott reporting "a violation and morale issues of the office as fully required by my position." (Doc. 46-4 at 4). It is not clear whether the "violation" concerned the allegations of Tarvin's electioneering activities. Ms. Burger attests that in January and February 2016, she documented several incidents of harassment directed by Kroncke against herself, Plaintiff Robyn Lewis, and Brandy Chisenall.

Ms. Burger testified at her deposition that in March and April 2016, she met with Scott and Kroncke to discuss personnel issues. At these times, they discussed Plaintiffs Lewis and Cone, among others. Scott and Kroncke indicated that the Plaintiffs had poor work performance "because they were verbally bashing Scott's and Kroncke's performance as leaders of the office." (Doc. 39-6 at 15-17).

On an unidentified date, Mattingly met with Robyn Lewis and Amanda Burger to discuss issues in the MCSAO. On April 11, 2016, the Macon County Board adopted the updated Macon County Employee Handbook ("Handbook") with contained "State's Attorney's Office Modifications." (Doc. 46-2 at 7). This provided at G-6, that employees were not to circulate election petitions or solicit report for candidates in the County building.

5

On or about July 6, 2016, Scott learned that there would be a $130,000 decrease in the MCSAO budget, beginning December 1, 2016. Scott testified that the office could not function if he laid-off lawyers or investigators, so he decided to lay off support staff; Lewis, Cone, and Chisenall. (Doc. 39-3, at 65-66). Scott laid them off the following day, although their positions were budgeted through December 1, 2016. Plaintiff Lewis has testified that she believes she was retaliated against, in part, for her friendship with former MCSAO employees Tamara Wagoner and Mary Cole; with Plaintiff Cone testifying that she was laid-off because of her friendship with Lewis, Chisenall, and Wagoner. (Doc. 39-1 at 129-133); (Doc. 39-2 at 30).

On September 13, 2016, Mattingly asked for the appointment of a Special Prosecutor to investigate State's Attorney Scott and a Special Prosecutor was appointed on January 27, 2017. An investigation was conducted, and the matter referred to a grand jury which found that Tarvin had engaged in illegal electioneering in violation of 5 ILCS 430/5-15 "Prohibited Political Activity," and that Scott was aware of it. It was determined, however, that the applicable statute of limitations had already passed. The grand jury also found that the MCSAO work environment was "toxic and threatening" and that Scott had, among other infractions, engaged in an abuse of power. The grand jury recommended a third-party review of HR practices, record retention and separation of duties. (Doc. 46 at 12).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more

likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. DISCUSSION

#### A. COUNTS I AND II - STATE LAW CLAIMS OF RETALIATORY DISCHARGE AND COUNTS III AND IV CLAIMS FOR VIOLATION OF THE ILLINOIS WHISTLEBLOWER PROTECTION ACT

Plaintiffs allege in Counts I and II that they were employed by the County and wrongfully discharged in retaliation for their protected activity, reporting electioneering and other incidents in the MCSAO. In the Counts III and IV Illinois Whistleblower Protection Act claims, Plaintiffs also allege that they were employed by the County, a requirement to bringing such an action. *See*

740 ILCS 174/15(b) ("An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceedings, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.") As a result, for actionable claims under Counts I-IV, and Count V-VI which will later be discussed, Plaintiffs are required to have had an employment relationship with the County.

Defendants deny an employment relationship, citing Illinois caselaw which holds that court personnel are state, not county employees, even when the county pays their salary and benefits. Defendants rely, in part, on *Orenic v. Illinois State Labor Relations Bd.*, 537 N.E.2d 784 (Ill. 1989), where the Illinois Supreme Court found that a county is not a joint employer of public defenders and other court employees, even though the Illinois Constitutional requires that counties fund the courts. *Id*. at 795 (finding "the State, not a county, is the sole employer of all court employees." Furthermore, "[e]xcept for setting and paying salaries and providing facilities … the counties are entitled to no other role in regard to the courts' nonjudicial employees that might arguably be considered the role of a joint employer."). *Id*. at 797. Defendants also cite *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1270 (Ill. 1990), which held that the office of the State's Attorney was established under the judicial articles to the Illinois Constitution, not those of the executive, legislative or local government.

Defendants assert that as *Ingemunson* found the State's Attorney's Office is part of the judicial branch and, as *Orenic* found that a county is not a joint employer of judicial branch employee, it is axiomatic that employees of the State's Attorney's Office are judicial, not county employees. *Burger v. Cnty. of Macon*, 942 F.3d 372, 375 (7th Cir. 2019) ( "Illinois State's Attorneys are state, rather than county, officers."). This is so even as here, where "a county pays

the salaries of … nonjudicial employees in the judicial branch, or even administers personnel policies covering them by agreement with the judicial branch." *Orenic*, 537 N.E.2d at 795.

In response, Plaintiff offers the conclusory statement that "Lewis and Cone were employees of Macon County assigned to work at the MCSAO; and as a result Macon County was a joint employer with MCSAO." (Doc. 46 at 27). In support of the alleged joint employment, Plaintiffs cite *Village of Winfield v. Illinois State Labor Relations Bd.*, 176 Ill. 2d 54, 60 (1997), which identified the factors to be considered in determining joint employment. These were the putative employer's role in: hiring and firing; promotions and demotions; setting wages, work hours, and other terms of employment; employee discipline; and the actual day-to-day supervision and direction of employees on the job."

Plaintiffs further assert that this is an issue of fact, not to be determined at summary judgment, citing *Robinson v. Sappington*, 351 F. 3d 317, 339 (7th Cir. 2003) ("[t]he issue of a joint employer relationship is a question of fact."). However, the Court is tasked at summary judgment with determining whether there is a genuine dispute "such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. Once a properly supported motion for summary judgment is advanced, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence ... the nonmoving party may not rest on mere allegations or denials in its pleadings.")

Plaintiffs fail to identify a genuine dispute as to whether the County jointly employed Plaintiffs where they have not supported that the County exerted the control contemplated in *Winfield*; that the County was involved in their hiring, firing, promotion, work activity, etc. The

9

only evidence Plaintiffs offer is that the County paid Plaintiffs' benefits and salary, a position discredited in *Orenic*.

For their parts, Defendants assert that it was the State's Attorney's Office which had statutory authority over MCSAO employees, so the County could not have had the "significant control" necessary to be a joint employer. Defendants cite Scott's affidavit attesting that it was his Office, not the County, which undertook the hiring, firing, and management of MCSAO employees. (Doc. 39-8 at 2). *See Orenic*, 537 N.E.2d at 794 (finding the county was not a joint employer where it did not share responsibilities for "hiring, firing, promotions, demotions, wages, work hours, etc."). This is so, as joint employment entails "two or more employers exert[ing] significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *Id*.

As the Court finds that Plaintiffs have failed to support that they were employed or jointly employed by the County, it need not further consider Plaintiffs' retaliatory discharge and Illinois Whistleblower Act claims which are predicated on an employment relationship. Summary judgment is granted as to Counts I-IV.

### B. COUNTS V AND VI - SECTION 1983 CLAIMS

<u>First Amendment Retaliation</u>

Plaintiffs plead under § 1983 which applies to the states through the Fourteenth Amendment and provides in pertinent part "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law." 42 U.S.C.

§ 1983; *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999). Section 1983 does not create substantive rights but "operates as a 'means for vindicating federal rights conferred elsewhere.'" *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460, 470 (7th Cir. 2018) (quoting *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011)).

The U.S. Constitution guarantees the right of expressive association, "the right to associate for the purpose of engaging in activities protected by the First Amendment." *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005). Plaintiffs plead that the County terminated their employment in retaliation for their exercise of their First Amendment right to freedom of expressive association; associating with those who did not support Scott or his re-election campaign. While the Court has determined that the County did not employ Plaintiffs, it may still be liable if Plaintiffs suffered constitutional harm through an official policy, custom, or practice of the County. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

Rather than identifying any particular policy which caused the alleged constitutional violation, Plaintiffs summarily state "Macon County deprived Plaintiffs of the protections afforded to Plaintiffs in the Macon County Employee Handbook; and deprived Plaintiffs of their constitutionally protected rights of freedom of association and freedom of speech; and instead allowed Plaintiffs' employment with Macon County to be terminated despite the protections afforded to Plaintiffs." (Doc. 46 at 29). Plaintiffs do not identify an unconstitutional County policy, and while they refer to the Handbook, it is clear that they claim the Handbook guaranteed them continued employment, not that it was a basis for their termination.

To the extent Plaintiffs assert that the County is liable for not adhering to the Handbook provisions, this is insufficient to state a Constitutional violation. *See Pulera v. Sarzant*, 966 F.3d

540, 551 (7th Cir. 2020) (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (finding that a violation of County policy does not amount to a constitutional violation enforceable under 42 U.S.C. § 1983.)

Plaintiffs have an additional argument to tie the County to their termination, that Mattingly, a County Official acting in his official capacity, exerted control over the MCSAO so as to render the County liable for Plaintiffs' termination. Mattingly has attested that he was "Chairman of the Macon County Board Justice Committee, charged by the Macon County Board with oversight functions of the County Civil and Criminal justice systems, including certain oversight functions concerning the Macon County State's Attorney's Office." (Doc. 46-2). Plaintiffs cite this as evidence that Mattingly had final decision-making authority over the MCSAO and that his failure to act implicates the County under *Monell*. Under *Monell*, of course, liability may be found where "the constitutional injury was caused by a person with final decisionmaking authority.'" *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (quoting *Estate of Sims v. County of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007)).

Defendants refute this claim, citing *Burger*, 942 F.3d at 373, where it was affirmatively held that it is the State's Attorney who has the authority over the Office of the State's Attorney and this authority is not delegated to the County or County officials. The related *Burger* case was brought against Macon County by Amanda Burger, the MCSAO Personnel Director referenced supra, alleging that the County was liable under § 1983 for her firing by Kroncke and Scott. In the Opinion, the Seventh Circuit cited 55 ILCS 5/3-9006 which provides: "The State's Attorney shall control the internal operations of his or her office and procure the necessary equipment, materials and services to perform the duties of that office." The Seventh Circuit determined that, by "statutory prescription," the State's Attorney, not the County, was responsible for the internal

12

operations of the State's Attorney's Office and had the "managerial authority to hire and fire." *Id*. at 375-376 (internal citations omitted).

There, as here, the Court considered the plaintiff's argument concerning the delegation of decision-making authority between the County and MCSAO. In *Burger*, plaintiff asserted that MCSAO officials Scott and Kroncke were acting as County policymakers when they terminated her, rendering the County liable. Here, Plaintiffs come at it from a different angle, that County Officer Mattingly was acting as an MCSAO policymaker when he failed to prevent Plaintiffs' termination.

The Court in *Burger* found no such delegation of authority, having noted that Illinois State's Attorneys were state, not county, officers. *Id*. at 375 (internal citations omitted). It indicated, however, that "even decisions by a state officer may constitute county policy in certain situations—specifically, when the county can and does delegate county policymaking authority to the state officer." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484–85, (1986). The Seventh Circuit noted that the issue of "[w]hether an official has local-government policymaking authority is a question of state law." *Id*. The Court found that, as 55 ILCS 5/3-9006 "gives exclusive control over the internal operations of the State's Attorney's Office directly to the State's Attorney," the County did not have authority over the MCSAO. As a result, the County "could not have delegated any decisional authority on internal-operation matters to Scott and Kroncke . . . . and Burger's firing may not 'fairly be said to represent' the county's policy[.]" *Id*. at 375-76 (citing *Monell*, 436 U.S. at 694).

Plaintiffs claim here that Mattingly was acting as an MCSAO policymaker fails for the same reasons. The cited statutory authority and caselaw establishes that Scott was liable for the operations of the MCSAO, including the firing of Plaintiffs. There is no evidence to support that

13

the County, which did not have authority over the MCSAO, could have delegated Mattingly authority to discipline or fire MCSAO staff. Conversely, Plaintiffs offer no evidence to support that Scott conferred any MCSAO authority to County Official Mattingly.

Plaintiffs' First Amendment claim fails as they have not identified any unconstitutional County policy which caused them harm; and have not established that the County is responsible for their firing. *See Donovan v. City of Milwaukee*, 17 F.3d 944, 953–54 (7th Cir. 1994) (citing *Monell*, 436 U.S. at 694) ("municipal liability attaches only 'when execution of a government's policy or custom . . . inflicts the injury [for which] the government as an entity is responsible under § 1983.'"). As a result, the Court need not consider the other elements of Plaintiffs' expressive association claim, whether they engaged in associational activity, and whether it was related to a matter of public concern.

Fourteenth Amendment Due Process

Plaintiffs also assert that the County is liable for violating the Fourteenth Amendment, claiming that they had a protected property interest in their employment, and that their termination violated substantive due process. Whether or not Plaintiffs had a protected property interest in their employment turns on a question of state law. *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)). In Illinois, "a person has a property interest in his job where he has a legitimate expectation of his continued employment based on a legitimate claim of entitlement." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009) (citing *Moss v. Martin,* 473 F.3d 694, 700 (7th Cir. 2007)). Plaintiffs claim the Handbook provided a property right through its alleged guarantees that Plaintiffs would not be terminated, absent cause. Plaintiffs cite caselaw to support that a Handbook can create an enforceable, contractual right if the language contains a "clear enough"

promise that an employee believes to be an offer, and "accepts the offer by commencing or continuing to work after learning of the policy statement." *Wojcik v. Commonwealth Mortg. Corp*, 732 F. Supp. 940, 942 (N.D. Ill. 1990). Plaintiffs also claim a guarantee as to the Handbook's progressive discipline provisions. Plaintiffs assert they could not be terminated without first being issued a verbal warning, followed by a written warning, a suspension without pay and, finally, a termination. (Doc. 46-8 at 38).

Defendants refute this, pointing out that the Handbook had affirmatively stated that employment was at-will; and had disclaimed any contract of employment. *See* below:

> **"THIS EMPLOYEE HANDBOOK IS NOT AN EMPLOYEE CONTRACT. This employee handbook <u>does not establish a contract</u> (express or implied) between Macon County and any employee regarding the terms and conditions of employment[.]"**
>
> **and**
>
> **"<u>EMPLOYEE AT WILL RELATIONSHIP</u>:** This employee handbook does not in any way alter the employment-and-will relationship between Macon County and its employees. Macon County and each employee has the right has the right (SIC" to terminate the employment relationship, at any time, with or without cause or notice."

(Doc. 39-7 at 7). The Court further notes that in the *Wojcik* case on which Plaintiffs rely, a similar contract disclaimer defeated the plaintiff's claim of a promise of employment. *Id*. at 941.

Here, there does not appear to have been a clear enough promise of employment, and there has been a finding that the County was not Plaintiffs' employer, so as to have been liable for discharging them. While Scott and the MCSAO employed Plaintiffs, neither is named in this Count and the MCSAO is not named at all in this suit. Summary judgment is granted as to Counts V and VI.

### C. COUNT VII - TORTIOUS INTERFERENCE

While the Court had previously questioned the capacity in which the Count VII and VIII claims were asserted against Scott, Plaintiffs disclose that they proceed against Scott in his individual capacity. (Doc. 30 at 31). Plaintiffs have pled that due to Scott's actions each Plaintiff's "business relationship with MACON and her employment with MACON were terminated on July 7, 2016." (Doc. 15 at 27, 28). Plaintiffs claim that Scott exceeded his authority in disrupting this not-particularly-defined relationship and, as a consequence, is not entitled to absolute immunity. (Doc. 46 at 31) (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 22 (1998). Defendants respond that it is within the scope of a State's Attorney's authority to terminate an at-will employee, and absolute immunity applies. Defendants also assert that under Illinois law, one is only liable if one tortiously interferes with the contract of another, not one's own contract. *Knickman v. Midland Risk Servs.-Illinois, Inc.*, 298 Ill. App. 3d 1111, 1116 (Ill. App. 4th Dist. 1998) (collecting cases).

The Court need not consider these issues, however, as Plaintiffs fail to provide facts to support that they had any relationship with the County. Plaintiffs do not expound on the "business relationship" to which they lay claim, and the Court has found that there was no employment relationship. As a result, Plaintiffs fail to establish that they had a relationship with the County with which Scott could have tortiously interfered. Summary judgment is granted as to Counts VII and VIII.

### D. COUNT IX AND X - COUNTY'S LIABILITY TO INDEMNIFY

In Counts IX and X, Plaintiffs assert that the County is a necessary party as it is potentially responsible to pay any official capacity judgment against "an independently elected officer" apparently referring to State's Attorney Scott who is named as a Defendant, and Board

Member Mattingly who is not. (Doc. 46 at 31-32). Confusingly, however, Plaintiffs have affirmatively asserted that their claims are against Scott in his personal capacity. *See Hann v. Gibson*, No. 85- 4563, 1986 WL 10357, at *2 (N.D. Ill. Sept. 15, 1986) (quoting *Kentucky v. Graham,* 105 S. Ct. 3099, 3105, 3107 (1985) ("Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.).

The Court need not further consider this issue, however, as the Court grants summary judgment as to all Counts, and there remains no liability or damages which the County might be called upon to indemnify. Counts IX and X are dismissed with prejudice.

## V.     CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment (Doc. 39). The Clerk is directed to enter judgment in favor of Defendants and against Plaintiffs. This case is now TERMINATED.


ENTERED this 5th day of December, 2022.


                                             s/James E. Shadid
                                             JAMES E. SHADID
                              UNITED STATES DISTRICT JUDGE